Case number 10-2249, Armenian Church of Lake Bluff v. Dept of Rev. We're going to listen to Apollon first. He can introduce himself and then we'll go to the police. Fifteen minutes for each side. Good morning, Your Honors. May it please the Court, my name is Wayne Gianpietro on behalf of the Armenian Church of Lake Bluff. The actions of the Department of Revenue in this case are a perfect example of why we need a Bill of Rights. Why there is a requirement that governments must act only through due process of law. Don't we have a Bill of Rights? We do. And that's why we need it. This case is why we need it and this case is why we need the courts to enforce the Bill of Rights because the Department of Revenue violated the due process rights of the Armenian Church of Lake Bluff. There was an administrative proceeding going on before an administrative law... Weren't there two proceedings going on? I'm sorry? Those proceedings began and then at the same time weren't there proceedings going on in Lake Bluff regarding the zoning of this property? Yeah, there was a separate case. I know that's not part of this case. That's not part of this case. No, but there were proceedings going on involving the zoning of this property. Right. All right. But that didn't have anything to do with... ...the positions and facts that were presented during the zoning. Those are in this record. Oh, they're in the record, Your Honor, but... Right. I'm just... I wanted to make that clear. Oh, okay. Well, that's true. That was going on. But what happened here was while all those things were being presented to the administrative law judge...  ...the director of the department decided the case. When you say we need a bill of rights here to protect the due process rights of citizens... ...let me ask you a really big question. Taking this case and if we were to find it in your client's favor, what relief would that be? You would go back to the original decision of the Department of Revenue... And uphold. ...that the property is entitled to the tax exemption. Didn't we? Just one more question. Wouldn't this case then be a blueprint for every other homeowner in Lake Bluff... ...to transform their home into a church via the internet, much like your client did... ...and seek to avoid paying property taxes and then watch Lake Bluff's public services that it provides... ...go downhill because you can't get police, you can't get fire, you can't get schools. All of these things that are dependent on property taxes. Why would we want to even consider doing this? And we're not arguing that this is a blueprint for that. Well, then let me ask you this. What is unique about your client's situation that would cause this case to stand apart... ...from any other individual who might seek to do the very same thing? Because of the way the Department of Revenue handled the case. I want to just interject something here. There is a statement by the hearing officer in which he said that although the director... ...has revoked the initial exemption, that that had no impact on his decision. And then he went through the reasons for his decision. Well, it didn't matter because he couldn't decide the case anymore. The case had already been decided. There were two proceedings, like you said. And let's get that clear. What happened initially was that the Michaels applied for a tax exemption. And it was granted based on filings. Correct? Right. But then Mr. Michaels had applied. It was the Armenian church. Oh, right. I misspoke. You're correct. It was the Armenian church of Lake Bluff that made the application. There were papers that had to be filed. And the exemption for 78%, I guess because of the time of the year, was granted. And not soon afterwards, the village of Lake Bluff and the elementary school district... ...asked to intervene and they were protesting the exemption that was allowed. So they requested that it be reviewed. Did they not? Right. All right. This was their appeal of the decision. Yes. And while that was going on, apparently the director took away the exemption. True? Right. And then at some point, the Armenian church wanted to question the director suddenly ripping away what had been granted. Right. But what had been granted could be taken away after a hearing. True? If you follow the right process and procedure. All right. Well, I'm just trying to get some facts out the way I understand the record. Now, there is a section in the statute, 200-1525, that does indicate that when property has been unlawfully exempted or which no longer qualifies for an exemption, that property may be returned to the tax office. True? Right. All right. Now, your claim is that this was a prejudged decision. The director ripped away the permit or the exemption, excuse me. The hearing officer in the original action basically was rubber stamping that decision. And the exemption itself that the hearing officer inquired into and actually looked at the religious beliefs in making a decision, which we all would agree is totally improper. So the question is, was this a prejudged decision? Another question is, did the hearing officer really inquire into the beliefs to reach the determination? Aren't those your two big claims? Yes. All right. All right. Okay. And against that backdrop, we have a zoning hearing going on, which indicates that the Michaels. Now, is this the Michaels or the church as far as the zoning? It's the church because the church is the owner of the property. Well, in the zoning hearing, there are depositions or affidavits presented which say that this property was not being used as a church. Well, that's what the peering is to determine. No, but what I'm asking you is we have some very serious conflicts. We have a proceeding where the village is protesting and the education district is complaining that this property doesn't, should not be getting an exemption. And we have a zoning action going on where the parties, the church who is claiming this is a church, that it's used primarily for church services, and that it also qualifies as a parsonage because the pastor must live there. When we have all this going on, at the same time, we have this situation in the zoning action where the same parties are basically giving conflicting testimony. They're saying this is our property. The village has no right to tell us we can't have private church services. And at the same time, the church is saying this is a church and we're here and most of our activities here are church-related and we're using it primarily. So don't we have a real problem going on with conflicting evidence by the church saying on the one hand in the zoning, this is our private property. We don't have to get permission to have a church. We don't use this as a church. And then we have the same church in this other proceeding saying completely the opposite. So I guess my point is the hearing officer had a lot of information to deal with and the record suggests that he was basing his decision on facts before him, not because the director pulled that exemption. But it doesn't matter because... It does matter because normally it's presumed that these people that are hearing these tax cases are not biased. They're not prejudiced. They're not like a rubber stamp. It's not the hearing officer's decision, Your Honor. It's the director's decision either which way. No, we have two decisions, and weren't they consolidated? No, no. This case doesn't involve summary judgments, cross motions for summary judgment on the original decision? Which is what the director's shortcut. He decided. But the hearing officer said, I am not taking into account anything that the director did. It doesn't matter. It does matter. It matters whether he prejudged this case. That's what we're here to decide. No, you're right. It's not the ALJ that we're reviewing. It's the director's decision because the ALJ only makes a recommendation. Right. He made a recommendation. Let me ask you this, counsel. Are you taking the position that the director had no authority to issue a decision contrary to the approval that had been previously given? Not if you did it right at the right time and in the right manner, and that's what due process is all about. You don't say, I'm going to decide the case. Now, Mr. ALJ, you go and find reasons to support my decision. There's nothing in the record that says that. Not one word of what you just said is in the record. If you can direct me to a statement, if you can direct me to some evidence, I would be happy to look into it. Well, that's what we tried to find out. When we appealed the decision of the director where he says, case is over, I've already decided. Then they try to appeal that. Then they say, oh, no, you can't appeal our decision. The case is already decided because of a decision that was made after the decision were appealed. So they're trying to prevent you from appealing the director's decision? Yes. As opposed to the ALJ's decision that was affirmed. They said the ALJ's decision was res judicata in the appeal from the director's decision that came first. But I thought the procedure is that the ALJ doesn't make a final decision. It simply makes a recommendation that must be accepted by the director. So in either instance, it's a decision by the director. Right. That's what happened. The director decided the case. ALJ went ahead and made his decision. So given that recommendation, the director adopted that. Are you saying that the procedures do not allow for the director to basically grant summary judgment or say as a matter of law or say no more proceedings are required here? The issue is so clear that if he does so, he's got to make findings and he's got to give reference to the evidence in the record. And he didn't do that. I'm going to ask you to indulge the court a little bit, Counsel, by allowing us to make these inquiries of the representative for the director and see what we can discover. Certainly. All right. And then you'll have time for rebuttal. I have a question. The property was purchased in the year 2004 by Susan Michael, was it not? Right. Put in her name. Originally, yes. And the church did come into existence in 2007. Right. And the property is in the name of who now? Armenian Church of La Club. The whole property? Right. Okay. It's an Illinois religious corporation. So Mrs. Michael transferred the property to the church? Yes. And at that point asked for the exemption? Right. Thank you. Now, I have one question before you are seated. You've made a suggestion that the administrative law judge didn't make any kind of full statement or finding back conclusions of law on this matter. That's not what I said, Your Honor. I'm sorry. What did you say? I said the director, when he short-circuited the proceedings before the administrative law judge decided the case, made no file. Now, the record contains a lengthy, lengthy decision by Kenneth J. Galvin. And in that is his statement that the director revoked or whatever, withdrew the exemption. He also indicates that that action did not impact his decision because in front of him at that time he had crossed motions for summary judgment on whether or not they were entitled to the exemption. Is that correct? That's what he said. All right. Well, that's what he said, okay? Whether we believe him or not, he made that indication. Now, after the ALJ makes the decision, the department approved it and recommended that the director approve it. Isn't that the actual proceeding? Well, the director approved the recommended decision. But it goes to the Department of Revenue. The Department of Revenue agreed with the ALJ. Through the director, yeah. I mean, the director is the one who approved the decision of the ALJ. Right. The director is the director of the department, correct, of the State of Illinois. And he's the one that makes the decision by statute. It's the director who makes the decision. And we review that decision. Yes. And at the same time that this review was going on or when the director indicated that he was revoking the tax exemption, the ALJ had already had this whole matter in front of them and the parties had the opportunity to argue their respective positions, true? I don't know whether they had completed their arguments at the time. They were in the process of doing that and making their arguments to the ALJ? All right. Well, it's a rather lengthy discussion. I mean, I was under the impression from the record that there were motions, cross motions for summary judgment in which both sides had the opportunity to present their respective positions to the ALJ, Kenneth Gelb. That's true. All right. Okay. Well, we'll hear from the director's representative. Thank you very much, counsel. You'll get time for rebuttal. Thank you. Thank you, Your Honor. May it please the Court, Brian Barrow, Assistant Attorney General, on behalf of the Department of Revenue. Just to answer just a little bit. Why don't you clear that up for us? I mean, how many decisions were made and what did the director really do and what process did he follow? The superseded certificate that was issued in April was not a final decision. So there was no prejudgment. But it certainly gave confidence to the taxpayer that they were going to get an exemption, and they certainly were disappointed when the director got involved. Not necessarily, Your Honor, because, remember, the director is the final decision maker. The director doesn't have to hint or send secret signals or do anything underhanded. So why send out anything if it isn't final? Your Honor, there's nothing in the record, and it's our position that the superseded certificate is irrelevant. But if you'd like, I can give you a little bit of the background of the Court. Superseded certificates are allowed under the statute, are they not? I'm not entirely sure. I think they should be superseded under the statute. But this was sort of an unprecedented situation where the Department initially granted this tax exemption on behalf of the taxpayer. Extensive discovery was taken, including evidence, for example, that the taxpayer had drawn a cross on the side of the photograph of his house. The Department filed the cross motion to preserve your judgment to answer your question in April of 2009. After all this discovery had been completed, the Department frankly felt it had been kind of duped here. And unlike other agencies... Were there multiple pictures of what were aspirational pictures? What does that mean? There was one picture of the house in which Mr. Michael admitted that he took the photograph and drew a cross on the side. There were other church bulletins that were provided in the record. What about the pictures apparently that were aspirational of what a chapel would look like? What were those? There were photographs taken, and I don't recall exactly, but there were photographs taken of a chapel that they hoped to construct. They bought some materials. Were those part of the original package submitted for the exemption? They were part of the... I believe they were part of the... And again, I may be incorrect. There was an initial package that the Department asked for more information, and I believe the photographs were in the second package. I guess the question is what would cause the initial deciding agency to grant the exemption to begin with? This was a very well-prepared package. It had bylaws. It had church bulletins. It had photographs. And those photographs are the ones that you've just mentioned that were inaccurate, to say the least. I thought the bylaws didn't really say anything. It looked like it created a church. It created this institution. There were letters from other churches welcoming this church to the community. And, I mean, if you're a busy staff member... Were there, in those papers, was there a suggestion that a particular priest or reverend of the other... Churches? Yes. That he lived on the property? There was a reference to a Father Jebezian. That was in the original papers. Was there a statement that he lived there? I don't know. You don't know? I don't know if that was in the original papers. There were two packages that were sent to the department. If that was in the first or the second package. I don't know. But that was in the papers that were presented to the department. Which time? I don't recall if that was the first or second package. But it was... Somewhere in your briefs, there's a suggestion that someone... Yes. ...indicated at some time that a person whose name begins with H, does that ring a bell? Yes, there was also a Hazari, Your Honor, and I don't have the exact record reference of where that occurred in the record. And I don't know if that was in the first or second package. Was there a suggestion that Father Aaron Jebezian lived on this property? Yes, there was. Was that at the time that the original petition for an exemption was issued? Yes. When the initial grant of the exemption was issued, that was, I believe, in the record. And there was a picture that was submitted with the original papers that had a cross drawn in? Yes. And this is what came out in the discovery on the summary judgment motion. Again, the department has somewhat of a dual role in these exemption decisions, unlike other agencies. It serves both as an adjudicator, but it also serves as a litigator. When you say dual, it causes me to wonder about counsel's concern or complaint that the department was almost following dual tracks, one from the original exemption granted and then being reviewed by the director, and the other one through the ALJ. And they only met at the point when the director overturned the exemption, and then the ALJ, I think, felt bound by that decision. No, that's not the case. I mean, this is a procedure which has been, I believe. But why were there two tracks to begin with? Why didn't you just let the ALJ do his job? Because, again, it was, at that point, what the department wanted to do, and it was a well-meaning, perhaps misguided, but well-meaning effort, just to realign themselves at that time. They didn't feel like they could stand with this taxpayer anymore as the litigator. But it had no effect on the adjudicatory end. That's a separate end. And, in effect, nothing ever came out of this because before anything happened on the superseded certificate, although the taxpayer did take an appeal of that, which he could, he had every right to do, and he did, because it was not a final decision, and, as a practical matter, every certificate granting or denying a certificate still had the director's name on it. The ALJ made his decision based on the record in the first proceeding. It was not based on anything else outside of that record. It was based on the record in the first proceeding. And this is what the director affirmed. Now, the director has discretion. The director doesn't have to accept that ALJ's decision. So there's no need, again, to prejudge. Is there any process that must be followed before the ALJ can reverse an exemption that's been granted? Counsel is suggesting that due process rights were trampled upon. No, because the process was filed here. Evidence was submitted. In this case, usually sometimes there's a hearing. Sometimes there's a motion for summary judgment, just like in a court case. This case went up on a motion for summary judgment. The evidence was considered by the ALJ. He decided that the proof did not show that the property was primarily used for religious purposes, did not qualify for the parsonage exempted, and interestingly enough, the taxpayer makes no objection to the evidence. I mean, if there's going to be a due process violation that's going to require the reversal of a hearing, there has to be prejudice. It has to show what was going to be wrong, what evidence would he submit that would change the result. And he has not done that. So there's simply no prejudice in this case. And that's really, at the end of the day, while the procedures here maybe were a bit unorthodox, it was not. Is it true that in the applicant's second supplemental answer to the Village of Lake Bluffs first set of interrogatories attested to by George Michael on December 1, 2008, he stated that the subject property is used as a parsonage for Pastor Aaron Shabajian. And I apologize if I mispronounce the name, but the spelling is J-E-B-E-J-I-A-N. This is from the ALJ, Kevin Galvin's findings of fact. Is that true that there was an affidavit? There are answers, sworn answers, to a set of interrogatories attested to by George Michael on December 1, 2008, in which he stated that the subject property is used as a parsonage for Pastor Aaron J-E-B-E-J-I-A-N. I don't have the record site for that. The record site is MSJ tab 6, George J. G. Michael deposition, exhibit E, interrogatory response number 10. I believe that is correct. That's what the ALJ found. And then there was also testimony from this pastor, J-E-B-E-J-I-N. Correct. In which he, in complete contradiction to the applicant's second supplemental answer to the Village of Lake Bluff's first set of interrogatories, said that he is not employed by the Armenian Church of Lake Bluff. He's employed full time as the Armenian pastor of St. Gregory the Illuminator Armenian Church. He stated that he lives at a location 2546 North Harlem Avenue in Elmwood Park and has lived there except for one year when he was on sabbatical in Armenia since moving to Chicago in 1998. And also in his statements, which I believe were all under oath and sworn to, that he has never changed his address, he's never lived at this property where it was earlier stated in the original applicant's second supplemental answer that this pastor actually used the property as his parsonage. Are those things that are in the record? That's all in the record. That's all correct, Your Honor. And that's the evidence that you believe that they're not disputing. Right. They're not disputing. And they're not disputing from their own affidavit to the zoning action. Do you know what the procedures are? You know, this matter was set for oral argument. Do you know what the procedures are if there's an exemption requested such as this and at some point it becomes apparent that there has been an actual falsification of those documents? Are you aware of any authority in the statute that allows the director to take immediate action when there are falsified documents being filed for purposes of tax exemptions in the state of Illinois? I'm not aware. There are procedures for enforcing tax fraud, Your Honor. I'm not aware of them or what the exact procedure is for that. But you do believe the director had the ability and the authority under the statute to take away an exemption that has been granted when the property no longer qualifies or was unlawfully exempted in the first instance? I believe there should be. There has to be, Your Honor. Again, I don't have a statutory cite for you. I don't know. Well, I've cited Section 2-15-5 of Section 35, but I can't imagine that there aren't statutory provisions for petitions that have falsified information in the request for a tax exemption. To state that someone lives there as a parson, a member of a longstanding member of a church who then testifies, swears, indicates under oath that he has never lived on the property, that that would give the director or someone within the Department of Revenue. Now, there were two hearings, were there not? There was the hearing that took place where the village of Lake Bluff was questioning the exemption. Right. And there was the Armenian church of Lake Bluff also questioning the withdrawal or the pulling away or the whatever, striking of the exemption. Actually, Your Honor, the way it worked was after the department granted the exemption, the village and the local school district intervened to challenge that exemption. Yes. So that was the hearing before the department on that. And there was also the zoning app and then there was the other zoning. Who made an appearance before that hearing? Did the church get an opportunity to be present at that hearing on the intervention side? That's the hearing we're reviewing today. There was a separate hearing that was requested on the superseded certificate, and that, again, went up on a separate track. That's administrative only? That was administrative only. And although it's not, again, it's not in the record. My understanding, this is a consolidated case. There was a decision on that, an administrative review complaint was taken, and that is consolidated with the case we're hearing today. So eventually they all, the circuit court heard all of the evidence on all of the, considered all the evidence on all of these matters. And the zoning matter was a matter simply between the village and the Armenian church. But evidence of the zoning testimony, depositions, that was all presented? Correct. In the cross motions for summary judgment? Correct. Or information that was sworn to in another proceeding? Right. It was an affidavit that was in another proceeding. That was part of the evidence on which the. . . Well, there were depositions taken in this case, were there not? There were, yes. Mr. Michael testified in a deposition, did he not? Yes. Took a note to be sworn to tell the truth? Yes. The second claim that somehow the department improperly considered the Armenian church's repentance or Michael George's religious beliefs in reaching his decision is also wrong. The inquiry into the religious beliefs is really ancillary to the ultimate decision. Again, the decision at the end of the day was based on the fact that the fact showed. . . It's one to make inquiries into the beliefs of someone. It's another to make inquiries into the validity of the claim itself. Correct. And you believe it's the latter rather than the former. Right. I mean, eventually. . . I mean, this was a complicated case coming up. And I mean, the ALJ had to go through and parse what the claims were. And that's what I believe he was essentially doing. But what he found at the end of his decision was that the primary purpose was not met because this was a private residence, not because of anybody's religious beliefs. And the parsonage exemption was not met simply because Mr. George's vocation was not that of a minister and he wasn't required to live on the property. It was very simple. He had a full-time job outside of the ministry. Right. He was a real estate broker. He was a banker. This was a private chapel for his private family use, which many people had. Well, that's what was certainly testified to in the zoning. Right. Correct. Correct. That's not the same testimony that was presented as far as this petition for an exemption, was it? Well, the affidavit. . . Weren't there contrary statements? The affidavit in the exemption decision was submitted as evidence in the exemption decision. Sorry. The affidavit in the zoning proceedings introduces evidence. And that goes to the parsonage element? Right. It actually goes to both. It goes to both? And the affidavit said that he attested to the fact that this was a private chapel for private religious use for his family. But for parsonage, you have to use it as a full-time. That has to be your full-time. Right. Or it has to be at least a vocation. It has to be a primary. You have to be required to live there as part of your duties. Isn't that what the parsonage exemption requires? Yes. Yes. And Mr. . . . Not simply that it's used as your residence for church purposes. Right. And not that it's simply convenient. And Mr. Michael admitted at his deposition that it wasn't. He wasn't required to live there. The hearing officer said, I do not question the sincerity of George Michael's religious beliefs. Did he not? Yes. He did say that. So in summation, there was no . . . None of the proceedings were prejudicial to the Armenian church. The evidence fully supports the director's decision. And we would just ask that it be affirmed that there are no other questions. Just so it's clear, due process, they were entitled . . . they were given the opportunity to present any evidence that they wanted to present. Correct. They had every opportunity for discovery to present the evidence, and they, again, never suggested what evidence they would present that would . . . What's the standard of review here today? Standard review. It's clearly . . . I believe it's clearly erroneous. I mean, obviously the . . . We owe deference to . . . Right. I mean, obviously, to the extent there's a due process concern, that is certainly de novo for the court. But in terms of the ultimate finding of fact and conclusions of law, that's clearly an erroneous standard that applies. All right. All right. Thank you very much. Thank you. Very briefly, counsel. Very briefly, I just don't understand the department's position that there were two proceedings here. There was one proceeding. The proceeding was, is this entity entitled to the exemption? Let's make clear that I think we've expressed a great deal of concern over the material that was presented to whatever the agency was in Lake Bluff that got this Armenian church an exemption to begin with, including the photographs with the drawn cross and aspirational photographs that really didn't reflect the real property as it existed when the application was filed. But that's a conclusion that somebody would make after hearing the evidence. But the problem here is . . . I don't think it's a conclusion. I think it's a fact in this case. And I don't think you're disputing it. And I think you're the one who called it aspirational, these photographs. And I think you conceded that the cross was drawn on that photograph. So the question is, I'm just pointing out that there are major concerns that we have, that these sort of proceedings that you want to claim that give you some sort of benefit because you rely on the outcome, that the outcome can only be as valid as the information that was presented to begin with. And when that information is not valid, you wonder why we should . . . Well, you also wonder why the proper procedures weren't followed by the department and why it didn't follow its own rules. And how can the director make a decision without giving any reasons, without citing any facts, and then say, well, it didn't really mean anything or really meant something, was a decision that was only a recommendation to me, but I've already decided the case. Well, counsel, I just want to point out, though, that the director had for his review this lengthy decision of Kenneth Galvin.  You're talking about the polling of the exemption versus the final decision that we're reviewing. We can't review non-final orders. We're not reviewing that he . . . we understand your argument that when he did this . . . Well, that was final. No, when he . . . We appealed. No. And they said . . . Well, I'm talking about final for purposes of our appellate jurisdiction. We are reviewing final decision that was entered by the director after he approved the decision that Kenneth Galvin wrote. But what my question is, he did have the benefit of this lengthy decision that Kenneth Galvin filed, which you say was prejudged or already decided. I understand that argument. But he did have this decision when the final decision of the director of the department to approve the ALJ's decision, he did have this. Well, sure he had. And it becomes the final judgment is when the director, and in your argument, when he, without due process and prejudging, pretty much just stamped this. And I understand that. Well, we also appealed from his premature decision. And that's a part of this case, too, because the department held that the later decision . . . Yes. His second decision was res judicata as to the decision that came before. So that's before this court as well, because that was a final decision, which was an administrative review. The two administrative reviews were both consolidated. Yes. They're both before this court. And so what we have is a circular reasoning by the Department of Revenue that I'm not going to tell you why I made the first decision, which didn't have any reasons and didn't have any finals. And, in fact, that decision is going to be controlled by the one that came later. Now, may I ask you one final question that I have? And that is, do you believe that the director has the authority to act upon an exemption that was improvidently granted? Not without findings and reasons. And what sites of the statute are you directing us to? I'm talking about the decision where the director took away the exemption that had been initially granted. He doesn't have that authority to do that willy-nilly. There's nothing in the statute that allows him to do that. Let me ask you my final question. That is, assuming you've made out your claim that the proceedings below weren't what they should have been, what relief are you asking for? Are you asking us to remand it for another hearing? No. Do you believe? That train has left the station. Okay, go ahead. Give me your relief. The exemption must stand for now. For now? It doesn't mean forever. What do you mean for now? Well, every exemption is for a certain period of time, for a certain statute. So you're saying the director had no authority or because they didn't follow the correct procedures that the sanction or the penalty is that the exemption has to stand for whatever period of time it's entitled to? That there's really no review? That's what your argument is? That because proper procedures weren't followed, there is no review? That's what happens every time the Constitution is violated, Your Honor. Somebody's charged with a criminal offense. His rights are violated. The case is thrown out and you can't have a trial. This is not a criminal case. Let's be very clear about that. This is actually a tax case. Of course. And we're guided by the decisions that are used to decide tax cases. And if you want to, why don't you give us a case, because I didn't see any in the briefs, that suggests that when there's a complaint of a due process violation or that the religious beliefs were examined, the cases teach us that perhaps the correct remedy might be a new hearing in front of a different officer or a new hearing in total. But I'm not aware of any case, and I don't believe you've cited one, that suggests that the reviewing court grants an exemption under these set of facts. Isn't this some kind of relief that you've suggested? But I don't recall a case in your briefs that says that the reviewing court should then order the exemption because there was some violation at the hearing level.  No, you said you're asking us to reinstate an exemption. That was granted by the Department of Revenue. But what case says that we as a reviewing court reinstate a tax exemption under these facts? Well, there's been no case like this. All right. We'll take it as a case of first impression.  Thank you very much. The court's in recess.